I'd like to reserve two minutes for rebuttal. Okay. Thank you. I also would like to, unless the court has any questions about the evidentiary issue, rest on the briefs and discuss the assault and battery with a dangerous weapon and sentencing issues. I'm not at all clear as far as why we should reach the sentencing issue. It seems to me the parties have agreed that the sentence in light of Johnson 2, the sentence is going to be vacated. However, there is a difference of opinion as to whether or not assault and battery with a dangerous weapon should be considered on remand. I understand that, but why shouldn't we let the district court conduct the full sentencing hearing in light of Johnson 2 instead of all this cross-referencing of supplemental records and supplemental evidentiary materials? Just do this in the ordinary fashion and determine. Even the district court may not have to resolve that issue. The issue was raised pre-Johnson 2. Oh, I know that, but pre-Johnson 2, there was a sentencing issue in this case. The parties have now agreed that the current sentence has got to be vacated. I understand perfectly well that counsel would like us to give them an advisory opinion as to how assault and battery with a dangerous weapon is going to work in the Johnson 2 era. I'm just questioning the orderliness of proceeding in that fashion. That's obviously up to the court, but I don't think it would be an advisory opinion because we are saying that as a matter of law, assault and battery with a dangerous weapon cannot count as a crime of violence for guideline sentencing purposes. So if that is so, then the district court would have no basis for imposing an enhancement on that for assault and battery with a dangerous weapon conviction. So I don't think it would be an advisory opinion, but if the court does not wish to proceed in that fashion. It's your time. Make your argument. But your disagreement with the government, although I think you've been living with us this week, haven't you? Third day in a row. Always a pleasure. Is your agreement with the government solely as a matter of law when it comes to the ABDW offense and whether it qualifies? Our agreement? Our disagreement. Yes, we do disagree on ABDW and there is also some disagreement on the resisting arrest in that we have argued that it is categorically not a crime of violence. But on the ABDW, do you envision any fact finding or record development or anything like that at all? No, we are arguing that as a matter of law, ABDW is categorically not a crime of violence. And what's your position on the divisibility or non-divisibility of the statute? That it is non-divisible. And then, if we were to get to the question, how do you deal with Voisin when it comes to whether Voisin has impliedly overruled Fish and 10 other circuits that have rejected recklessness as a sufficient mens rea standard? Well, I don't think that Voisin does affect Fish or the determination of recklessness or the categorization of recklessness for statutes other than the misdemeanor domestic violence. Well, clearly the court says in a footnote, they're not resolving the others. But the way that Voisin is decided by focusing on the word use and leocal does seem to raise some question about what all the circuits were doing under ACCA and Section 16 and the guidelines. Well, but the court also said that you have to look at the different contexts and purposes of statutes in determining what the word use means. And I think that one of the differences is that for the misdemeanor domestic violence, first of all, that statute speaks simply in terms of use of physical force. Both the definition of crime of violence in the guidelines and in Section 16 talk about the use of physical force against the person of another, which may impose a more focused view of use and give you an intent requirement beyond recklessness. You can flail your arm about and that may be the use of force and you may hit someone, but is that the kind of use, when you're talking about use against the person of another, if you just don't look and you're in a crowd, you're reckless, you flail, that may be the use of force. And the question is, is it against the person of another, which is the additional definitional provision or component of Section 16 and the guidelines? But how do you square that with the additional requirement that there be a dangerous weapon? Excuse me? The dangerous weapon component. In terms of recklessness? Yes. Well, Massachusetts has defined the offense as, it doesn't say you have to use it in any particular way. So I don't think that the, if you touch someone with an unloaded gun, you have used a dangerous weapon, but that doesn't mean that you have engaged in the kind of violent force that would be required to give you a crime of violence to make assault and battery with a dangerous weapon a crime of violence. You have both the intentional and reckless aspects and you have the force aspects. Johnson 1 speaks of the kind of physical force that is required. The intentional touching is not enough. It has to be violent force that can be sufficient to cause bodily harm. And an intentional touching with something that could be defined as a dangerous weapon does not necessarily rise to that level of force. Perhaps there's a different analysis under the residual clause where most of these cases were discussed, but we are now focused on the elemental force clause. And I think that that requires a more focused and different analysis, looking only at what is elementally required. And both Mathis and de Camp have made that quite clear, that we are only looking at the elements of an offense and that elements are defined in a particular way. I think that this court in Lee had the right approach on elements, talking about them as the physical force clause isn't going to help you here if you're talking about a gun. Because if you're talking about putting a gun to someone's head, you're going to have, and doing it intentionally, you're going to have an attempted use or threatened use of physical force against the person. So I'm not sure how the force clause is. Isn't the key here the scienter issue? Sure. The scienter is certainly a key question. But dangerous weapons are not limited to guns. And there are other dangerous weapons that you could touch someone with that would not, I suggest, necessarily rise to the level of the use of physical force. If you do it intentionally. Isn't where you have to keep coming back to is that under ABDW, recklessness is enough. So therefore, reckless driving of a car can be ABDW, as we recognized in Fish. Yes. And one of the examples in Voisine was recklessly throwing a plate. And that may qualify as a misdemeanor crime of violence in the domestic setting. But is that really the kind of crime that Congress was trying to get at in talking about violent felonies? The purpose of the Armed Career Criminal Act was to get at people who were going to be people who would intentionally pull a trigger. People who would be violent. Not necessarily someone who throws a plate at a wall and it shatters and a shard touches someone, which is what Voisine said would be enough to constitute the domestic violence misdemeanor. So yes, I think that the reckless and intentional division in ABDW is certainly a key factor and one that this Court could use, could rely on. But there's also the division in the use of force, the offensive touching and the harmful and reckless batteries that the Massachusetts Court has recognized as different forms. Now, they're not necessarily different elements because the Massachusetts Courts have said you do not need to distinguish between the intentional or reckless form of assault and battery or between the harmful and offensive touching form. But there's also the division in the use of force that a jury need not make that determination and we suggest that that definition of what the jury must find in order to return a verdict is the way that you define what the elements of an offense are. That that goes back to the way the Supreme Court has discussed it from Richardson on up through Mathis and de Camp and this Court has discussed it in the same way in Lee. And that there really is no other way of defining an element of an offense other than what the Court in a plea, what the defendant must necessarily admit to in order to be convicted or in a jury context what the jury must find unanimously and beyond a reasonable doubt. And since Massachusetts does not require that a jury unanimously beyond a reasonable doubt distinguish between intentional and reckless or offensive touching and harmful that that makes the statute categorically over broad and cannot qualify as a crime of violence. Now it may seem counterintuitive that some of these offenses that we're talking about wouldn't be viewed as crimes of violence but we're looking at a specific statute with a specific purpose and if Congress needs perhaps needs to revisit this whole area and see how you actually deal with 50 different states that define their crimes in many different ways. But right now we are bound by the Supreme Court's most recent discussions of these issues in Mathis and de Camp and they clearly say that the Court is to look only at the elements of the offense to determine whether the elements of the offense establish the key requirement of use attempted use or threatened use of physical force against the person of another. And if they don't do that it is categorically over broad and cannot be used. Thank you. Your Honor, may I please call Randall Cromer on behalf of the government. I'd like to start with the question of whether this would be, as Judge Sonia suggested, an advisory opinion. And I would like to say that it would not under the circumstances of this case. And that is because this is not a career offender case or some other case where the absence of one of the two would resolve the issue or at least one of the major issues. This is a case in which the sentence was enhanced under the provision 2K, I won't try to remember the provision, that says that your sentence, your base offense level is set based on whether you have two qualifying felony crimes of violence. If there is only one, a different base offense level applies. And if there are none, yet another base offense level applies. So resolving one of the two questions presented, leaving the resisting arrest to the district court and resolving this issue would resolve a real issue in the case. It would send it back knowing that the person has at least one qualifying felony crime of violence and thus that minimum base offense level. So I think it's important to note this is not a case where the omission of the one fully resolves the dispute, say, as it might in a career offender context where there is no longer the basis for the career offender without a single predicate. But another reason, and I offer this simply because it is important, worth noting, that this is an offense that has spawned a great deal of litigation. We did an informal survey. I said this only for your edification. I realize it's not a legal argument necessarily of the cases in which ABDW has been presented as the challenge predicate, whether in a 2255, a successive 2255, or direct appeal. From just a couple of days of responses, we have close to 90 cases. So it is one of the predicates that's frequently relied upon and in which there is extensive ongoing litigation in the district courts as to whether it should count. And therefore, resolving it also has a practical value in addition to what I would argue is a clear legal value in this case of taking one of the issues on appeal off the table and remanding for the resolution of the one that we agree the district court should address in the first instance. But turning to the substance of the argument, in the government's view, developments in the law, since we briefed this, rendered this a relatively straightforward case. With respect to the intentional form, we think that Winsleton essentially resolves the question about whether the degree of force used is sufficient to make it, to bring it within the context of the force clause. Winsleton held, and the argument specifically made, that because the threatened touching under Massachusetts law could be nearly an offensive touching, that that made it not a crime of violence. The court held that the threat of a touching, no matter how light, involving a dangerous weapon, dangerous in conception or dangerous as used, was sufficient to bring it within the confines of the force clause. And given that that is a lesser-included offense of this offense, it would make little sense to hold that the threat to put a gun against somebody would constitute an adequate show of force to be a threat of violent force. But proceeding to actually touch them with it would not. And essentially, that's what the defendant is asking here, is to distinguish a lesser-included offense from the greater offense and told that the greater offense would not qualify when the lesser does. In our briefing, we recognized that there was some tension with this Court's decision in Fish on the force clause of 16A. But that has been resolved by the Court's decision in Fields, which explained, as we had suggested might be the case, that that wasn't briefed or argued by the parties and should be treated as dicta. So now, I think the only on-point precedent is Wendelton, and it resolves the question of whether we need to care, whether it was the harmful form of battery versus the offensive form of battery on the intentional side, and that those would all qualify under Wendelton. Which leaves open, as Judge Carras said, the question of how to deal with the reckless form. And there again, I think evolution of the law has changed what we would have argued and what the effect of those arguments is. We argued in our brief that even if recklessness in general might not qualify, it should under Massachusetts law, because Massachusetts has a particular form of recklessness that includes the intentional commission of a wanton or reckless act. It's not completely reckless. There has to be an intentional element. We argue that that took it out of the mainstream and justified treating this as a crime of violence, even if it might not otherwise be if it had a pure recklessness mens rea. But in Voisin, the court essentially obviated the need to make that distinction, because it held that even completely reckless conduct would qualify as the mens rea to show as an element the use of force. Well, Envoy, in terms of the law of the circuit before Voisin, the law of the circuit under Fish was that Massachusetts ABDW did not involve the intentionality because it could have a reckless drunk driving case. Yes. And so it therefore failed to satisfy the use against the person. Right. Voisin then is what you, I think, need to point to, because Voisin then focuses on use under the domestic violence. Now, what is it? 921-833-AA. Yes. But then Voisin drops a footnote and expressly says, we're not deciding this mens rea issue because, as they previously noted in Castleman, all 10 other circuits that decide the issue had come out exactly where we are, that recklessness wasn't enough. Correct. And that's why we're not suggesting that Voisin, in fact, is binding on this case and resolves it in the sense of force. But you think we should extend the logic. But the logic of it applies equally. And I think the point that I would make, and we make it in our supplemental response, is that the nature of the analysis that was performed in Voisin was not connected in any way to the particular context, domestic violence context. And it's worth noting that that is different from what this Court did. In this Court's underlying decision of Voisin, this Court made a sort of case-specific ruling looking at the particular context of domestic violence. What do you do, though, about the difference in the language? Before the Court in Voisin, they had a statute that simply required the use of force, whereas here we have a statute that requires the use of force against the person of another. And to use force against seems to distinguish the very example that the Court gave in Voisin of throwing a plate at the wall, not intending to hit the spouse, but a shard hits the spouse. And the Court held that's a use of force. It doesn't seem to me, though, that it's necessarily a use of force against the person. So that word against, which is in our statute here today, but not in Voisin, how do you deal with that? Well, I think I grant that that is a distinction that the Court needs to consider. I think that argument wasn't made before, so in some sense I'm responding to it right now. But my sense is that the idea that against another automatically implies a certain degree of intentionality is not clear to me. I mean, it could be simply a descriptive in terms of what occurs rather than part of the intentionality. And that's kind of the argument that goes through a lot of this, is are we talking about subjective versus objective, or are we talking about part of the intent or mere description of the crime? In thinking about, for example, distinguishing the arguments based on Castleman that suggest that the domestic context is different, one can imagine, in particular, that a misdemeanor crime of violence might be defined differently than something that needs to be called, in the end, a violent felony. There are certain terms that one might logically think would change based on that different context. I think, for example, Castleman is easily explained by the fact that one would intuitively believe that something called a violent felony has a higher degree of force, a level of forcefulness, than would be the case of something that's called a misdemeanor crime of violence. That's part of our natural intuition to view a felony as a more serious offense. But taking other words of the statute, is an attempt defined differently? Are other words in the description, would we assume that they would have a different meaning? And I would argue that we wouldn't necessarily assume that they do, and that's why the argument based on a use of force having a different meaning in one context to another. Again, leaving aside your question about the language, which I think is an important one, but just sort of starting with the word use itself, one would assume that it is not the kind of thing that changes with the context. You either use or you don't, and the definition, the reliance on dictionary definitions supports that idea. Let me ask you a higher level sort of policy issue. We're talking about an issue of federal law in which individuals are sentenced throughout the country on a daily basis under the guidelines here. And if all the circuits that have addressed the use of force against language in any of its iterations have uniformly held that intentionality is required as one of the elements, recklessness isn't enough, and if the Supreme Court in Voisin has said expressly we're not addressing those, we're not overruling those, why should we then introduce an element of non-uniformity into that national scheme rather than letting, if the Supreme Court thinks that Voisin has the ramifications that you said, let it change it on a national uniform basis for the whole country at once? Well, I would say one thing I think is worth pointing out in some sense. I mean, one can read Voisin as taking issue with the fact that all the circuits had sort of leapt to resolve the footnote in Leocal a certain way. Leocal left open whether reckless conduct would qualify. It said accidental conduct would not, but it left open recklessness. All of the circuits, it seems, eventually came to the conclusion that leaving that open meant that, in fact, recklessness would not. Voisin, you know, very carefully and pointedly says that, in fact, you can harmonize, you know, its decision that recklessness does with the decision that it did not in Leocal by saying that the dividing line is not between intentional and reckless, it's between reckless and accidental. That that is the mens rea distinction of importance in the federal statutory scheme. So it's difficult for me to read Voisin and not thinking that they're suggesting that courts perhaps jumped the gun in assuming what Leocal meant, because they're saying that their decision can be harmonized with Leocal. Again, they're not purporting to resolve an issue that's not before them. How does this apply in other contexts? But by saying that the two can be harmonized, they certainly suggest that it was not automatically the case that leaving it open in Leocal implied that it could not qualify. Isn't it, just more generally, in Congress making a decision in the Sentencing Commission and whatever statute we're talking about, that someone should serve more time in prison because they're a violent criminal? Isn't it rational to think that what Congress had in mind was people who intended to cause harm? And that's a pretty big distinction in terms of who we're going to put away for a lot longer as one person who intended to cause harm and another who did not intend to cause harm but was reckless? I mean, that's an inference. Although it's an inference in a sense that Voisin rejected because it was merely the language, Congress's language was use of force against a person or other, and they said that recklessness was that thing. So essentially, they are trying to determine the intent of Congress in using use of force, and they hold that using force recklessly is making it an instrument in the sense that Congress would have intended, again, looking to generic, distinct definitions in dictionaries and finding that that's what use of force would tend to encompass. So again, I think it's hard to go past what they say other than to say that the nature of analysis, by focusing so clearly on a general definition, on a common understanding of what the word use means, says a lot about what they would think in other cases where that use of force language is used, acknowledging that the additional language provides some reason for further consideration rather than a direct application of Voisin. But again, I don't think that against the person has to imply anything beyond anything different than the use of violent force. In both cases, the key question is, is it a use? And that one, in effect, was against the other may be more descriptive than it is, again, pointing to anything about the intent of the person acting. So I would say, I guess, again, our view is that Voisin does change the landscape and that it does, in fact, provide the operative definition here. The only other thing I would say is, I guess, is just to point out that although we haven't discussed it, it wasn't discussed at length as a big issue. The government does view these as clearly divisible along the intentional versus reckless divide. The defense counsel sort of suggested that there's been doubt cast on that particular division. I think that that's clearly not the case. And in fact, as pointed out in the briefing earlier in the case and in the supplemental briefing, the SJC has described the two forms of defense, intentional and reckless, as having different elements. They're instructed. The instructions are very different for the two forms of the offense. And in addition, the instructions do require that when both theories are put to the jury, the jury be asked to point out which one or ones they decided upon, and if required, a specific unanimity instruction is given. So the only question really is the fact that an instruction is not always given or automatically given. Does that take it out of the category of elements? And I would argue, as I pointed out in the supplemental brief, that that can't be the case. Nothing in Mathis says that the procedural question of whether they simply usually or always are instructed on specific unanimity takes away the status of something as an element that otherwise in state law is identified as an element, which is the case here. Did the Sheppard documents exist to make a difference here on this point? Your Honor, I don't know on that question. I inquired, but I don't believe that they've been obtained. So I don't think I can at this point provide information to the court, but I don't believe we know if we have the documents and furthermore what they would show with respect to this question. If Your Honor, so I have further questions, I'll rely on the brief. Thank you. Thank you, counsel. I'd like to briefly address the Massachusetts jury. Mr. Weisner, at the start, could you just comment on the last remark the prosecutor made? Can you shed any light on the existence or availability of the Sheppard documents? I cannot. I am not aware of any. I don't think there was any request for Sheppard documents, so I do not know whether they do exist or not. So we don't, so obviously we don't know what they would show or what bearing, if any, they would have on this case? No. Okay. Thank you. I would like to address the comment right before that about the Massachusetts jury instructions and what they do or do not require in terms of verdict slips or specific unanimity. I'll submit a 28-J letter. I found this last night and my computer had crashed. The 2016 version of the assault and battery instructions have a note that says that no verdict slip or specific unanimity instruction is required where both intentional and reckless assault and battery are alleged. Where the evidence warrants instructing on both intentional and reckless, the jurors need not be unanimous on whether the assault and battery was intentional or reckless. The judge, therefore, need not give a specific unanimity instruction or provide verdict slips, citing Nistretta, which was the case that we have cited in the brief. In terms of whether Wendelton is a lesser-included offense, whether ADW, as addressed in Wendelton, is a lesser-included offense of ABDW, I would direct the Court's attention to Commonwealth v. Poro, where the Court says that they don't always define lesser-included offenses in the classic way that we consider them of, you know, is there an elemental subset, but that they can, in certain instances, look at them more broadly. And, in fact, saying that the threatened battery is included as a lesser-included of intentional assault and battery, even though they are elementally quite different. Thank you. Thank you.